728 A.2d 307 (1999)
321 N.J. Super. 154
STATE of New Jersey, Plaintiff-Respondent,
v.
Shawn CUMMINGS, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted March 16, 1999.
Decided May 11, 1999.
*310 Ivelisse Torres, Public Defender, for defendant-appellant (Russell S. Heckler, Designated Counsel, of counsel and on the brief).
Patricia A. Hurt, Essex County Prosecutor, for plaintiff-respondent (Gary A. Thomas, Assistant Prosecutor, of counsel and on the brief).
Before Judges PRESSLER, KLEINER and STEINBERG. *308
*309 The opinion of the court was delivered by STEINBERG, J.A.D.
This appeal requires us to consider the relationship between the five-year time bar of R. 3:22-12 and the relaxation authorization of R. 1:1-2 which permits the court to relax a rule if adherence to it would result in injustice. We must also consider the nature of the allegations in a petition for post-conviction relief that would entitle the petitioner to an evidentiary hearing.
Petitioner Shawn Cummings contends that the motion judge erred in dismissing his petition for post-conviction relief because it was time barred. He further argues that the judge erred in not granting him a full evidentiary hearing on his contention that his trial counsel was ineffective. We reject both arguments and affirm.
Tried by a jury, petitioner was found guilty on December 23, 1985, of felony murder, N.J.S.A. 2C:11-3(a)(3); first-degree armed robbery, N.J.S.A. 2C:15-1; and related weapons offenses. On January 31, 1986, the trial judge sentenced petitioner to thirty years of imprisonment, to be served without parole, on the charge of felony murder. The remaining counts were disposed of by way of merger or the imposition of concurrent sentences.
According to the State's proofs the victim, a reputed drug dealer, was shot to death in his apartment on South Harrison Avenue in East Orange on February 20 or February 21, 1985. The medical examiner opined that the victim had been shot several times at close range, sustaining wounds in the head, chest, face, and forearm. During the course of the investigation of the murder the East Orange police interviewed Aaron Diggs, then aged sixteen, Derrick Notis, Oonie Simmons, and Darnell Kiser. Each of them stated that defendant had admitted his involvement in the incident to them. The State called Diggs, Notice, Simmons, and Kiser as witnesses at defendant's trial and each, to some degree, recanted their prior statements. The State moved their prior statements into evidence and the trial judge overruled defendant's objections and allowed the statements to be admitted as prior inconsistent statements pursuant to then Evid. R. 63(1)(a) (now N.J.R.E. 803(a)(1)).
On June 6, 1988, in an unpublished opinion we conditionally affirmed defendant's convictions. See State v. Cummings, No. A-3311-85T4 (App. Div. June 6, 1988), certif. den., 122 N.J. 349, 585 A.2d 360 (1990). We were concerned that the record did not provide sufficient information to enable the judge to decide the issue of the reliability of the statements of Notis, Simmons, and Kiser without a hearing conducted pursuant to then Evid. R. 8(1) (now N.J.R.E. 104(a)). Accordingly, we remanded to the Law Division for a hearing on that issue, instructing that if the challenged statements were found to have been made in circumstances bespeaking their reliability, defendant's convictions would stand, but if the evidence showed that the statements were not made in circumstances establishing their reliability, defendant's convictions should be vacated and a *311 new trial granted. We did not retain jurisdiction.
For reasons not explained in the record, the remand hearing did not take place until November 16, 1990. At the remand hearing the judge, who was the trial judge, concluded that the statements were reliable. Defendant again appealed, and in an unpublished opinion on December 1, 1992, we affirmed. See State v. Cummings, No. A-2686-90T4 (App.Div. Dec. 1, 1992). Defendant's petition for certification was denied by the Supreme Court on May 13, 1993. See State v. Cummings, 133 N.J. 444, 627 A.2d 1148 (1993).
Defendant did not file his petition for post-conviction relief until February 1, 1996, ten years after his conviction. The petition for post-conviction relief that is supplied as part of petitioner's appendix does not set forth any reasons for petitioner having waited ten years from the date of his conviction to file the petition. Moreover, the petition does not set forth the grounds upon which the claim of ineffectiveness of counsel is based.[1]
In response to the motion judge's question as to what constituted excusable neglect sufficient to relax the five-year time bar of R. 3:22-12, counsel indicated that petitioner had difficulty obtaining the trial transcripts and felt he could not submit a good faith motion for post-conviction relief in the absence of the transcripts. The motion judge suggested that neither petitioner nor counsel addressed the time bar issue at all. Counsel then argued that the appellate review process and the remand hearing justified relief. The motion judge ultimately rejected those conclusions and dismissed the petition based upon the five-year time bar set forth in R. 3:22-12.
In this appeal from the denial of his petition for post-conviction relief, petitioner also moves to supplement the record by including a certification setting forth his contentions as to why he delayed in filing the petition for post-conviction relief and why, in his opinion, his trial attorney was ineffective. The State correctly objects to the motion since the facts contained in the certification were not submitted to the trial judge, and he did not rule upon them. Nevertheless, rather than require petitioner to file a new petition and in the interest of fairness as well as judicial economy, we grant petitioner's motion due to its obvious relevance in determining whether a remand is required. See State v. Preciose, 129 N.J. 451, 457, 609 A.2d 1280 (1992).[2]
In his certification petitioner asserts that he did not file an earlier petition for post-conviction relief due to the pendency of the appeals, remand hearing, and appeals from that determination. He also asserts that he has difficulty reading and writing and did not realize until 1995 that he could move for post-conviction relief, and at that point it was difficult to obtain his trial transcripts, although those transcripts should have been in the possession of the Office of Public Defender. He further states that his trial attorney prevented him from testifying at trial by incorrectly advising him that he would be cross-examined regarding his prior adjudications of delinquency. He further asserted that he would have testified that he was at the apartment of Kyle Brown in Newark at the time the homicide took place and therefore could not have committed the crime. He also would have explained that the statements he made to Diggs, Notis, Simmons, and Kiser referred to a different robbery in Orange and not the robbery that led to this indictment. Moreover, petitioner asserts that his trial attorney only talked to him once before the trial began and was totally unprepared to defend him. In addition, *312 he contends that his trial attorney failed to adequately investigate the case. Specifically, he contends that his trial attorney should have spoken to Alexander Edward Murphy, Jr., also known as Quasime, and "Big Head Salleem" whose addresses he supplied to his attorney. According to petitioner, Quasime, now deceased, was his cousin. Petitioner asserts that Quasime and Big Head Salleem were suspects in the case and would have been willing to talk to his attorney had his attorney attempted to interview them. Significantly, petitioner does not state what Quasime or Big Head Salleem would have told his attorney and how they would have exculpated him. Moreover, he supplies no certification from Big Head Salleem as to what he would have said.
In his certification petitioner also explains that during his trial the prosecutor argued that the gun used in the murders was sold to "Little Red". According to petitioner the prosecutor never found Little Red but he informed his attorney where Little Red could be located. Nevertheless, according to petitioner, his attorney made no effort to find or talk to Little Red. Again, petitioner asserts that Little Red would have spoken to his trial attorney but does not set forth what Little Red would have said. Nor does he supply an affidavit or certification from Little Red.
Finally, petitioner asserts in his certification that he now has information that the person responsible for the murder of the victim was Leroy Smith. Petitioner sets forth no facts as a basis for that claim.
On this appeal, petitioner raises the following issues:
POINT I THE TRIAL COURT ERRED IN HOLDING THAT THE PETITION FOR POST-CONVICTION RELIEF WAS OUT OF TIME. THE EXCEPTIONAL CIRCUMSTANCES OF THE CASE AMOUNT TO EXCUSABLE NEGLECT, AND THE INTERESTS OF JUSTICE REQUIRE A RELAXATION OF RULE 3:22-12. (PARTIALLY RAISED BELOW).
POINT II THE TRIAL COURT ERRED IN NOT GRANTING PETITIONER A FULL EVIDENTIARY HEARING BECAUSE HE MADE A PRIMA FACIE SHOWING THAT HE WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL CONSTITUTIONALLY GUARANTEED TO HIM. (PARTIALLY RAISED BELOW).
POINT III PETITIONER'S CERTIFICATION SHOULD BE MADE PART OF THE APPELLATE RECORD BECAUSE IT SUBSTANTIATES THE IMPORTANCE OF THE CONSTITUTIONAL CLAIMS THAT DEFENDANT RAISED IN HIS PETITIONER FOR POST-CONVICTION RELIEF. (NOT RAISED BELOW).
Post-conviction relief is New Jersey's analogue to the federal writ of habeas corpus. State v. Afanador, 151 N.J. 41, 49, 697 A.2d 529 (1997); State v. Preciose, supra, 129 N.J. at 459, 609 A.2d 1280. It is a safeguard that provides a defendant with a means to challenge the legality of a sentence or a final judgment of conviction by raising issues that could not have been raised on direct appeal and therefore ensures that a defendant was not unjustly convicted. See State v. McQuaid, 147 N.J. 464, 482, 688 A.2d 584 (1997). Post-conviction relief, however, is not a substitute for direct appeal and a petition for post-conviction relief may not be filed while appellate review is available. See R. 3:22-3; State v. McQuaid, supra, 147 N.J. at 483, 688 A.2d 584. A petition for post-conviction relief must be verified by defendant and must also set forth with specificity the facts upon which the claim for relief is based, the legal grounds of complaint asserted, and the particular relief sought. See R. 3:22-8. On a first petition an indigent defendant is entitled to representation from the Office of Public Defender. See R. 3:22-6(a); State v. Picciotti, 231 N.J.Super. 111, 112-13, 555 A.2d 29 (App.Div.1989); State v. King, 117 N.J.Super. 109, 111, 283 A.2d 757 (App.Div.1971).
Amendments to post-conviction relief petitions are to be freely allowed and assigned counsel may, as of right, file an amended petition within twenty-five days after assignment. See R. 3:22-9. With the exception of a petition to correct an illegal *313 sentence which may be filed at any time, a petition for post-conviction relief must be filed within five years after the judgment or sentence sought to be attacked unless it alleges facts showing that the delay beyond five years was due to defendant's excusable neglect. See R. 3:22-12. The five-year period for filing a petition for post-conviction relief commences with the entry of a judgment of conviction. See State v. Dugan, 289 N.J.Super. 15, 19, 672 A.2d 1240 (App.Div.), certif. denied, 145 N.J. 373, 678 A.2d 714 (1996); State v. Riley, 216 N.J.Super. 383, 389, 523 A.2d 1089 (App.Div.1987). The essential purpose of the five-year time bar is to encourage defendants reasonably believing they have grounds for post-conviction relief to bring their claims swiftly and discourages them from sitting on their rights until it is simply too late for a court to render justice. State v. Mitchell, 126 N.J. 565, 576, 601 A.2d 198 (1992). The rule therefore serves to respect the need for achieving finality of judgments and to allay the uncertainty associated with unlimited possibilities of relitigation. Ibid. Nevertheless, the rule is not rigid and, if a petitioner can demonstrate excusable neglect, a court may disregard the five-year time bar. Ibid. In addition, the rule may be relaxed or dispensed with if adherence to it would result in an injustice. See R. 1:1-2.
With these principles in mind we first consider petitioner's contention that the motion judge erred in dismissing the petition because it was not timely filed. We emphasize that the petition itself must allege the facts relied on to support the claim that the delay in timely filing the petition was due to excusable neglect. See State v. Mitchell, supra, 126 N.J. at 577, 601 A.2d 198. Here, the petition, filed ten years after the judgment of conviction was entered, asserts no facts to support a contention that the delay was due to excusable neglect. In this case we have indulgently permitted the expansion of the record by the filing of petitioner's supplemental certification. However, we caution that in the future we may require strict adherence to the requirement that the petition itself set forth the facts relied on to support a claim of excusable neglect or, alternatively, that counsel immediately file an amended petition setting forth those facts. Here, petitioner contends that the delay in filing the petition timely was due to excusable neglect. He contends that he has difficulty reading and writing and because he is practically illiterate he did not realize until 1995 that he could move for post-conviction relief. At that point, he contends that it was "very hard" to obtain his trial transcripts and, that although he was sentenced on January 31, 1986, the remand hearing that took place as a result of his direct appeal was not concluded until November 16, 1990, and his direct appeals from that remand hearing did not conclude until May 13, 1993, when our Supreme Court denied certification. We reject those contentions.
Petitioner's conclusory statement in his certification that he has difficulty reading and writing and did not realize until 1995 that he could move for post-conviction relief does not establish excusable neglect. See State v. D.D.M., 140 N.J. 83, 100, 657 A.2d 837 (1995) (defendant's psychological treatment during the criminal proceedings and thereafter up until the filing of the post-conviction relief requirements does not constitute excusable neglect in the absence of an allegation of specific facts tending to show that his psychological treatment prevented him from timely filing a petition for post-conviction relief); State v. Murray, 315 N.J.Super. 535, 539-40, 719 A.2d 190 (App. Div.1998), certif. granted, N.J. (1999), (petitioner's lack of legal knowledge and advice by original counsel that continuing litigation would be futile does not constitute excusable neglect so as to avoid the time bar of R. 3:22-12).
Moreover, the time limitation for filing a petition for post-conviction relief is not tolled during the pendency of appellate proceedings even though R. 3:22-3 bars the filing of a petition while appellate review is available. See State v. Dugan, supra, 289 N.J.Super. at 19, 672 A.2d 1240; State v. Dillard, 208 N.J.Super. 722, 727, 506 A.2d 848 (App.Div.), certif. denied, 105 N.J. 527, 523 A.2d 169 (1986). In Dugan, supra, we affirmed defendant's conviction but remanded for resentencing. We rejected defendant's *314 post-conviction relief contention that the five-year period of filing the petition did not commence until the entry of the amended judgment of conviction reflecting his resentencing pursuant to the remand. We concluded that that argument was inconsistent with the language of R. 3:22-12 and its essential objective, which is to satisfy the need for achieving finality of judgments and to allay the uncertainty associated with an unlimited possibility of relitigation. Petitioner attempts to distinguish Dugan contending that here the remand was not for purposes of resentencing but to determine whether the statements used to convict him were properly admitted. Accordingly, he contends that the five-year period should not begin to run until the remand proceedings were decided adversely to him. Implicit in his argument is the fact that since his direct appeals from that determination were not exhausted until after the five-year period had run, we should relax the time bar of R. 3:22-12 pursuant to R. 1:1-2. We disagree.
In our prior opinion we affirmed defendant's convictions but remanded with the understanding that in the event the statements were deemed inadmissible the conviction should be vacated. On the other hand, we said that if the statements were deemed properly admitted, the conviction would stand. Moreover, we did not retain jurisdiction. At that time there were no appeals pending and R. 3:22-3 would not have barred the filing of a petition for post-conviction relief. We acknowledge that petitioner sought certification by the Supreme Court. However, that application was denied on July 30, 1990, which was before the remand hearing, and petitioner certainly could have filed a petition at that time. Accordingly, we conclude that petitioner has not alleged facts sufficient to constitute excusable neglect so as to avoid the five-year time limitation set forth in R. 3:22-12.
We next consider whether strict adherence to the time bar of R. 3:22-12 would result in an injustice to petitioner. Where there is a true injustice, R. 1:1-2 is available to correct it. However, relaxation may not be routinely afforded in order to avoid application of R. 3:22-12. To do so would render R. 3:22-12 virtually meaningless. Accordingly, R. 1:1-2 is only intended to permit relief in exceptional cases and is not intended to eviscerate other rules. See State v. Mitchell, supra, 126 N.J. at 579, 601 A.2d 198. In the context of post-conviction relief, the time bar of R. 3:22-12 should be relaxed only under truly exceptional circumstances. Id. at 580, 601 A.2d 198. In considering whether to grant relief under R. 1:1-2, the motion judge must consider the extent and cause of the delay, the prejudice to the State, and the importance of petitioner's claim in determining whether there has been an injustice which calls for relaxation of the time limits. Ibid. Obviously, the longer the time-span since the original trial the more difficult a retrial becomes. Ibid. Therefore, absent compelling, extenuating circumstances, the burden of justifying a petition filed after the five-year period increases with the extent of the delay. Ibid. The court must also consider the State's ability to prosecute the case after a long delay. Ibid. The availability of key witnesses, the continued availability of evidence and other factors that may unduly prejudice the State's ability to prove its case must also be considered. Ibid. The trial court must delicately balance these concerns against the significance of petitioner's interest in proceeding on his or her petition. Ibid. If petitioner articulates facts that demonstrate a serious question about his or her guilt and is prepared to provide factual evidence to support it, then sufficient grounds for relaxing R. 3:22-12 might exist. Ibid. Petitioner must offer something more than a bare allegation. Ibid. Petitioner must initially allege specific facts which, if believed, would demonstrate the likelihood of injustice by a preponderance of the evidence. Id. at 589, 601 A.2d 198. If petitioner is unable to make such a prima facie showing, by definition he has not demonstrated the exceptional circumstances contemplated by R. 1:1-2, and the post-conviction relief court need not engage in the balancing process set forth in Mitchell, supra.
Even if we were to agree that the nature of the remand here, that is, a critical evidential issue rather than merely resentencing, constituted an extraordinary circumstance *315 encompassed by R. 1:1-2, we would nevertheless conclude, under the circumstances here, that petitioner had to act with reasonable dispatch after resolution of that issue and the exhaustion of direct appeals from that determination. Here, the direct appeals were concluded on May 13, 1993. Yet, petitioner waited nearly three years from that date to file this petition. Under those circumstances, we conclude that R. 1:1-2 should not be invoked merely because of the nature of the remand proceedings.
We next consider whether petitioner's contention that he was denied the effective assistance of counsel constitutes an injustice sufficient to relax the time limitations. In order to establish a claim of ineffective assistance of counsel petitioner must show that counsel's performance was deficient. This requires a showing that counsel made errors so serious that counsel failed to fulfill the counsel guarantee of the Sixth Amendment. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984); State v. Fritz, 105 N.J. 42, 52, 519 A.2d 336 (1987). Second, petitioner must establish that counsel's performance was so deficient as to create a reasonable probability that these deficiencies materially contributed to his conviction. See State v. Fritz, supra, 105 N.J. at 58, 519 A.2d 336. We are satisfied that petitioner has not articulated facts that demonstrate a serious question about his guilt and therefore conclude that this is not the exceptional or extraordinary case in which there is an injustice sufficient to invoke R. 1:1-2 to relax R. 3:22-12's procedural time bar.
We also consider petitioner's claim that he was entitled to a full evidentiary hearing not only on his claim of ineffectiveness of counsel but also on the issue of whether he was entitled, under R. 1:1-2, to relaxation of the time bar of R. 3:22-12. Although R. 3:22-1 does not require evidentiary hearings to be held on post-conviction relief petitions, R. 3:22-10 recognizes judicial discretion to conduct such hearings. See State v. Preciose, supra, 129 N.J. at 462, 609 A.2d 1280. As to the first of these claims, Preciose holds that trial courts ordinarily should grant evidentiary hearings to resolve ineffective-assistance-of-counsel claims if a defendant has presented a prima facie claim in support of post-conviction relief and the facts supporting the claim are outside the trial record. Ibid. As in a summary judgment motion, the motion judge should view the facts in the light most favorable to a defendant to determine whether a defendant has established a prima facie claim. Id. at 462-63, 609 A.2d 1280. Nevertheless, in order to establish a prima facie claim, a petitioner must do more than make bald assertions that he was denied the effective assistance of counsel. He must allege facts sufficient to demonstrate counsel's alleged substandard performance. Thus, when a petitioner claims his trial attorney inadequately investigated his case, he must assert the facts that an investigation would have revealed, supported by affidavits or certifications based upon the personal knowledge of the affiant or the person making the certification. See R. 1:6-6. In that context, we consider petitioner's contentions indulgently and view the facts asserted by him in the light most favorable to him. We address first petitioner's contention that he was denied the effective assistance of counsel because his attorney advised him that if he testified, his juvenile adjudications could be used to impeach his credibility. If that advice was given, it was incorrect. A witness's prior conviction of a crime may be admitted for that purpose. See N.J.R.E. 609. However, a juvenile adjudication does not constitute conviction of a crime and may not be used for impeachment purposes. See State v. DePaola, 5 N.J. 1, 18, 73 A.2d 564 (1950); State In Interest Of K.P., 167 N.J.Super. 290, 293-94, 400 A.2d 840 (App. Div.1979). In his certification petitioner also contends that had he testified he would have said he was not present at the commission of the crime but was at the apartment of Kyle Brown in Newark, New Jersey. We conclude that this bare assertion of an alibi at this late date, without more, is insufficient to support a prima facie case of ineffectiveness. We note that petitioner has not supplied an affidavit or certification of Brown that would support petitioner's alibi. Moreover, petitioner has not demonstrated why Brown did not testify at his trial.
*316 In addition, petitioner asserts that had he testified at his trial he would have explained that the statements that he made to Diggs, Notis, Simmons, and Kiser referred to a different robbery, not the robbery and murder of the victim. Taking the witness stand to state that the robbery that petitioner admitted to was a different robbery does not set forth a reasonable probability that petitioner would not have been convicted had he taken the stand. This is so since Detective McGarry had testified that there were no other homicides involving a drug dealer in East Orange in the area of South Harrison Avenue in February 1985 and in the witnesses' prior statements, they said the admissions by petitioner involved a robbery and a fatal shooting.
Finally, we consider petitioner's contention that trial counsel failed to adequately investigate the case in that he failed to interview witnesses. Significantly, some of those witnesses were suspects in the case and it is highly doubtful that they would have talked to defense counsel. More importantly, petitioner offers nothing as to what those witnesses would have said had they been interviewed.
In sum, considering the extent and cause of the delay and the obvious prejudice to the State and balancing those considerations against the showing petitioner has made, we conclude that a prima facie showing of ineffective assistance has not been made. Accordingly, there was no injustice resulting from the time bar of R. 3:22-12 sufficient to warrant relaxation thereof pursuant to R. 1:1-2.
Affirmed.
NOTES
[1] We observe that paragraph seven of the petition contains directions to state with specificity the facts upon which the claim for relief is based, together with the legal arguments and all other claims. There is a reference as follows "see attached memorandum". However, there is no memorandum attached in the petition supplied in petitioner's appendix. At oral argument on the return date of the petition, counsel referred to issues raised by petitioner in his pro se petition as well as a supplemental brief filed by counsel. Unfortunately, in violation of R. 2:6-1(a)(1)(H), counsel has failed to include in his appendix the portions of petitioner's petition which may have set forth his factual and legal contentions, as well as the supplemental points asserted by post-conviction relief counsel in his brief.
[2] We note that if we required defendant to file a new petition rather than grant his motion to supplement the record he would probably be confronted with a contention that the new petition is procedurally barred since it could have been raised in this petition. See R. 3:22-4(a).